UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>– against –<br><br>TAIYYIB ALI MUNIR,<br><br>                 Defendant.<br><br>In re BLOOMBERG NEWS,<br><br>                 Applicant. | **Memorandum and Order Granting in Part and Denying in Part Application of Bloomberg News**<br><br>No. 12-CR-648-1 |

**JACK B. WEINSTEIN, Senior United States District Judge:**

**Appearances:**

For the Government:

    Loretta E. Lynch, Esq.
    United States Attorney
    Eastern District of New York

    By:   Cristina Marie Posa, Esq.
             Assistant United States Attorney

For the Defendant:

    Pamela L. Johnston, Esq.
    Foley & Lardner LLP
    Los Angeles, California

    Adam Gregory Pence, Esq.
    Foley & Lardner LLP
    New York, New York

For the Applicant:

    Samuel M. Leaf, Esq.
    Willkie Farr & Gallagher LLP
    New York, New York

**Table of Contents**

I. Introduction ........................................................................................................................ 2
II. Facts and Procedural History................................................................................................ 3
III. Law Governing Access to Judicial Documents .................................................................... 6
   A. Generally............................................................................................................................ 6
   B. As Applied to Presentence Reports.................................................................................... 8
   C. As Applied to Sentencing Memoranda and Supporting Letters ....................................... 10
IV. Application of Law to Facts................................................................................................ 11
   A. Presentence Report........................................................................................................... 11
   B. Sentencing Memorandum and Letters ............................................................................. 12
V. Conclusion........................................................................................................................... 13

## I. Introduction

Bloomberg News seeks revelation of two sentencing documents unavailable to the public. Requested is access to: (1) a sentencing memorandum of defendant's attorney, accompanied by supporting letters from relatives and associates, filed and docketed under seal in advance of the sentencing hearing; and (2) an unfiled presentence report prepared by the United States Probation Department. *See* Ltr. from Bloomberg News, June 24, 2013, ECF No. 33.

The movant argues that unsealing these documents is appropriate because "the public has an interest in knowing the factors considered in criminal sentencing proceedings" and the sealed documents leave the public and press "unable to fully evaluate the basis for the conclusions reached in the sentencing of [the defendant]." *Id*.

While the government takes no position regarding disclosure of defendant's sentencing memorandum and supporting letters, it objects to publication of the presentence report (1) as unnecessary because the information it contains is readily available from public documents, and (2) because disclosure would "have a chilling effect on the Probation Department's ability to

obtain detailed and important information it currently provides in [presentence reports] from both defendants and the government." Ltr. from Gov't, July 3, 2013, ECF No. 34.

Defendant objects to releasing both documents. *See* Ltr. from Pamela L. Johnson, July 10, 2013, ECF No. 35. His arguments for continued sealing of the presentence report largely echo those of the government.

As to the sentencing memorandum and supporting letters, defendant contends that public disclosure "would harm him personally, his family members, his friends, and is unfair to do after the fact to this private person." *Id*. His memorandum "incorporates and addresses portions of the [presentence report], includes private addresses and private information, and . . . includes a detailed discussion of letters of support from friends and family." *Id*.

Bloomberg News's application is granted in part and denied in part. The presentence report will remain sealed. Those portions of defendant's sentencing memorandum and letters of support that do not reveal information related to private medical and identifying information of defendant's family members and quotations from the presentence report will be unsealed.

## II. Facts and Procedural History

An arrest warrant for defendant and a complaint were issued on April 2, 2012. *See* Complaint, Apr. 2, 2012, ECF No. 1 ("Compl."); Arrest Warrant, Apr. 2, 2012, ECF No. 2. Both documents are publicly available in the court's files. Described in the complaint was an insider trading conspiracy with international dimensions involving the "chief executive officer of a financial advisory and consulting firm based in New York," "a high-level government official . . . of [a] Central Asian Country, [the] government [of which] was overthrown in a coup in April 2010," and several providers of insider trading information, among them defendant. *See* Compl. ¶¶ 3-7. Bloomberg News and other news outlets have reported that the "high-level

government official" involved in the plot is Maksim Bakiyev, the son of former Kyrgyzstan President Kurmanbek Bakiyev. *See* Christie Smythe, *U.K. Man Sentenced to Time Served for Trading Plot*, Bloomberg News, Jan. 7, 2013, http://www.bloomberg.com/news/2013-01-07/u-k-man-sentenced-to-time-served-for-insider-trading-plot.html; Alan Cullison & Devlin Barrett, *Asian Scion's Trades Draw Scrutiny*, Wall St. J., Oct. 17, 2012, http://online.wsj.com/article/SB10000872396390444592704578062501410114 458.html.

Defendant was arraigned on August 15, 2012; an Information issued two months later. *See* Min. Entry, Aug. 15, 2012, ECF No. 6; Information, Oct. 15, 2012, ECF No. 18. Like the complaint and arrest warrant, the Information was publicly filed and docketed. The conduct charged in the Information—as opposed to the facts alleged in the complaint—was limited to one overt act: an agreement to provide "non-public information that was to appear in an earnings report" to an undercover FBI agent in exchange for money. *See* Information, Oct. 15, 2012, ECF No. 18. The Information lacks any reference to high level former government officials or financial industry executives.

In open court, defendant pled guilty to the single charge of insider trading. *See* Min. Entry, Oct. 15, 2012, ECF No. 20; Tr. of Plea Proceedings, Oct. 15, 2012, ECF No. 21 (docketed on Oct. 22, 2012). For his participation in an insider trading conspiracy, he was sentenced in early January 2013 to time-served (nearly one month) and three years' supervised release. *See* 18 U.S.C. § 37; Min. Entry, Jan.7, 2013, ECF No. 27. Members of the press were free to attend the sentencing hearing, order transcripts and see a video recording of the proceeding. *See In re Sentencing*, 219 F.R.D. 262, 264-65 (E.D.N.Y. 2004) (describing the court's practice to video record all sentencing proceedings in order to capture "[t]he defendant's words, his facial expressions and body language, the severity of any infirmity, the depth of his family's reliance, or the feebleness of his build. . . ."). *Cf. Hamilton v. Accu-Tek*, 942 F. Supp. 136, 138 (E.D.N.Y.

4

1996) (granting application to broadcast argument on ground that "*[a]ctually seeing* and hearing court proceedings, combined with commentary of informed members of the press and academia, provides a powerful device for monitoring the courts" (emphasis added)).

On January 9, 2013, the court published a detailed Statement of Reasons explaining the rationale for defendant's sentence. *See United States v. Munir*, No. 12-CR-648-1, 2013 WL 3466558 (E.D.N.Y. Jan. 9, 2013). This document was available to the public. *Id.*

As noted in the Statement of Reasons, and as allocuted to by defendant at the open plea proceedings, defendant served as a middleman between a "person located in New York who said he could obtain earnings reports for companies before public release of that information" and "investor[s] who would pay . . . for access to these earning reports which [he] knew to contain non-public material information about public companies." Tr. of Plea Proceedings, Oct. 15, 2012, ECF No. 21 (docketed on Oct. 22, 2012), at 24; *Munir*, 2013 WL 3466558, at *1-2. He was charged and sentenced only for offering to sell pre-published earnings reports to an undercover FBI agent—not for his participation in the international events described in the criminal complaint. Tr. of Plea Proceedings, Oct. 15, 2012, ECF No. 21 (docketed on Oct. 22, 2012), at 25-26; *Munir*, 2013 WL 3466558, at *2.

The Statement of Reasons indicates that defendant was sentenced after "[r]espectful consideration was given to the sentencing guidelines, the Sentencing Commission's policy statements and all other factors listed under 18 U.S.C. § 3553(a)." *Munir*, 2013 WL 3466558, at *1-2. His sentence was informed by the parties' arguments at sentencing, their briefs and the presentence report. *Cf. Rita v. United States*, 551 U.S. 338, 356 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."). Provided in the Statement of Reasons are the defendant's personal and family histories, his

criminal conduct and efforts at rehabilitation, and the deterrent effect of the sentence. *See generally Munir*, 2013 WL 3466558, at *1-2. Except for information mentioned in open court, nothing in the presentence report was relied upon in devising the sentence.

**III. Law Governing Access to Judicial Documents**

    **A. Generally**

A web of constitutional, common and statutory law applies to protect the news media's ability to seek, have access to, and publicize information in government files. *See* U.S. Const. amend. I ("Congress shall make no law . . . abridging the freedom of speech, or of the press."); *New York Times v. Sullivan*, 376 U.S. 254 (1964) (right to print information); *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597-98 (1978) (common law right of access to judicial documents); *United States v. Amodeo II*, 71 F.3d 1044, 1048-50 (2d Cir. 1995) (standard governing common law right of access); Freedom of Information Act, 5 U.S.C. § 552 *et seq*. (right to access to government documents).

A presumption of transparency of court proceedings is reflected in Congress's directive that sentencing proceedings be held "in open court." 18 U.S.C. § 3553(c). *See also* United States Sentencing Comm'n, Guidelines Manual 12 (Nov. 2012) ("An advisory guideline system continues to assure transparency by requiring that sentences be based on articulated reasons stated in open court that are subject to appellate review.").

Access to information relied upon in sentencing proceedings is not absolute. The First Amendment provides only a "qualified . . . right of access." *United States v. Alcantara*, 396 F.3d 189, 199 (2d Cir. 2005). Proceedings may be closed and documents sealed if "'specific, on the record findings . . . demonstrating that closure is essential to preserve higher values and [any imposed restriction] is narrowly tailored to serve that interest.'" *Id*. (quoting *United States v.*

6

*Haller*, 837 F.2d 84, 87 (2d Cir. 1988)). Required by the First Amendment is a balancing of "the public's right of access against the privacy and fair trial interests of defendants, witnesses and third parties." *United States v. Gerena*, 869 F.2d 82, 85 (2d Cir. 1989).

The common law right of public access to "judicial documents" is also constricted: there is a *rebuttable presumption* that documents which are "relevant" and "useful" to the judicial process should be accessible to—rather than sealed from—the public. *See United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*"). The "weight" afforded to full public access will be heaviest when "judicial documents" directly affect adjudication, including a court's sentencing decision. *Amodeo II*, 71 F.3d at 1049; *cf. United States v. Gotti*, 322 F. Supp. 2d 230, 250 (E.D.N.Y. 2004 ) (sentencing letters accorded "little weight" because they "did not influence the sentence"). Availability to the public of judicial documents under the common law must be balanced against countervailing factors such as "the danger of impairing law enforcement or judicial efficiency" and privacy interests of the defendant and innocent third parties. *Amodeo II*, 71 F.3d at 1050.

Consideration of at least five vectors of varying force and direction should be undertaken in exercising the trial court's wide discretion in deciding an application for access to sentencing materials.

First, the notion of general deterrence—a key factor in sentencing, *see* 18 U.S.C. § 3553(a)—requires that punishment resulting from criminal conduct be publicized. When the press publishes the consequences of law-breaking, the effect of a sentence on general deterrence is enhanced.

Second, courts should operate openly. This permits the public to evaluate the judiciary's work.

Third, barriers to reentering society with a fresh start for ex-convicts are raised when news of their past illegal conduct is widely available to potential employers and the public. Publicity will probably add to the taint of a conviction even after a defendant has served his sentence. *See United States v. Mateo*, 299 F. Supp. 2d 201, 209-10 (S.D.N.Y. 2004) ("[B]eyond the offender's actual deprivation of liberty when incarcerated, a host of other penalties and burdens always attend criminal conviction, to name a few: losses of family life, of socioeconomic status, of employment and career opportunities; diminution of certain civil rights and entitlements; and countless humiliations and indignities commonly associated with living in confinement.").

Fourth, effective presentence reports require significant candor by the defendant, his family and associates in order for the sentencing judge to fully appreciate all aspects of the case and defendant's background when exercising the awesome responsibility of determining punishment. Full cooperation and provision of information by the defendant might be adversely affected if it were known that confidential disclosures might be revealed.

Fifth, the Probation Department, which prepares presentence reports, is an arm of the court. Its role is analogous to that of a judge's law clerk upon whom the judge depends for openness, candor and privacy. *Cf.* Fed. Jud. Center, Maintaining the Public Trust: Ethics for Federal Judicial Law Clerks (2002). The free flow of honest information may be constrained if internal presentence reports are routinely revealed to the public.

The fourth and fifth factors, dealing with presentence reports, are discussed in greater detail *infra*, Part III.B.

**B. As Applied to Presentence Reports**

With regard to applications to reveal presentence reports, the decision of the court system has been to emphasize the fourth and fifth vectors, keeping the confidentiality of presentence reports in order to maintain a robust dialogue between the sentencing judge and its neutral advisors in its Probation Department. *See U.S. Dep't of Justice v. Julian*, 486 U.S. 1 (1988) ("[I]n both civil and criminal cases the courts have been very reluctant to give third parties access to the presentence investigation report prepared for some other individual or individuals."). *See also* Tr. of Sentencing Hr'g, *United States v. Huntley*, No. 13-CR-54 (E.D.N.Y. May 9, 2013) ("Huntley Sentencing Tr.").

Presentence reports operate outside the realm of the First Amendment's protections and are not considered public documents under the common law. *See Alcantara*, 396 F.3d 197 n.6 ("Courts have generally held . . . that there is no First Amendment right of access to *pre-sentence reports*." (citing *United States v. Corbitt*, 879 F.2d 224, 237 (7th Cir. 1989) (emphasis added)); *United States v. Charmer Indus., Inc.*, 711 F.2d 1164, 1175 (2d Cir. 1983) ("[I]n light of the nature of the presentence report as a court document designed and treated principally as an aid to the court in sentencing, we conclude that the report may not properly be disclosed without authorization by the court.").

Part and parcel of the Probation Department's invaluable work in "collecting and independently verifying information [regarding sentencing] and making it available to the Court" are presentence reports. *United States v. Pabon-Cruz*, 321 F. Supp. 2d 570, 572 (S.D.N.Y. 2003). They are prepared by Probation Officers, who "'serve as neutral information gatherers for the sentencing judge.'" *United States v. Cortes*, 922 F.2d 123, 126 (2d Cir. 1990) (quoting *United States v. Colon*, 905 F.2d 580, 588 (2d Cir. 1990)). The critically important role assigned to presentence reports is reflected by the fact that they are governed both by statute and the Federal Rules of Criminal Procedure. *See* 18 U.S.C. § 3552(a); Fed. R. Crim. P. 32.

*Charmer Industries* held that a "court should not release a presentence report to a third person unless that person has shown a *compelling need* for disclosure to meet the ends of justice." *Charmer Indus., Inc.*, 711 F.2d at 1176 (emphasis added). "[A] fair measure of discretion" is provided "in weighing the competing interests in order to determine whether or not the person seeking disclosure has shown that the ends of justice require disclosure." *Id*. at 1177. Critical to this analysis "is the degree to which the information in the presentence report cannot be obtained from other sources." *Id*.

This court recently opened a presentence report to the press and the public in a case involving a State legislator who stole funds appropriated for the poor she was elected to represent. Her arrest and sentencing occurred within the context of widespread abuse of the public trust by New York State's legislators. *See United States v. Huntley*, --- F.R.D. ---, 2013 WL 3043402 (E.D.N.Y. May 9, 2013) (Statement of Reasons); *United States v. Huntley*, --- F. Supp. 2d ---, 2013 WL 1881536 (E.D.N.Y. May 7, 2013) (order of unsealing). The public has a special need to know illegal activities of its elected officials so it can effectively participate in the democratic election process and control government policies in the appropriation and administration of public moneys. *See Huntley*, 2013 WL 1881536, at *4-5. These considerations overrode all others in supporting the court's decision to take the unusual step of opening up the presentence report to the press and public. *Cf. Bery v. City of New York*, 97 F.3d 689, 694 (2d Cir. 1996) ("The First Amendment has surely been valued as essential to the preservation of a political democracy in this country . . . .").

C. As Applied to Sentencing Memoranda and Supporting Letters

The qualified right of access to judicial proceedings and documents, protected under the Constitution and common law, "extends to materials submitted to the Court in connection with

sentencing that the Court is asked to consider." *United States v. King*, No. 10 Cr. 122 (JGK), 2012 WL 2196674 (S.D.N.Y. June 15, 2012) (citing cases).

Access to a defendant's sentencing memorandum and letters of support from third parties can be protected. *See, e.g.*, *United States v. Tangorra*, 542 F. Supp. 2d 233, 237 (E.D.N.Y. 2008) (letters submitted "as part of the sentencing process . . . . are judicial documents subject to the common law right of access"). Their express purpose is to influence the court's decision-making process; they are intended to play a significant role "in the exercise of Article III judicial power." *Amodeo II*, 71 F.3d at 1049. A strong presumption of public access controls, rebuttable only where sealing "is narrowly tailored" to serve "higher values." *Alcantara*, 396 F.3d at 199.

## IV. Application of Law to Facts

### A. Presentence Report

In the present case, the interests of the press and public in keeping their elected officials in check are not present. The defendant was a minor cog in a private insider trading conspiracy. As explained in the defendant's allocution and the published Statement of Reasons, defendant was a minor middleman—a sort of messenger—between an individual with access to inside information and those who wanted to profit from it. Those who can be deterred by his sentence will have already heard of this case. The size of the punishment is more critical to general deterrence than are the details of the defendant's background.

There is little need for dissemination of the sealed presentence report. An abundance of publicly-available information describes the nature of the offense and conviction, as well as the defendant's personal and family background. The criminal complaint (ECF No. 1), Information (ECF No. 18), transcript of plea proceeding (ECF No. 21), and Sentencing Memorandum (ECF No. 23) are filed, docketed and available for downloading. The transcript of the sentencing

11

hearing—at which defendant, his attorney, an Assistant United States Attorney, and a Probation Officer spoke—can be obtained from the files. *See* Min. Entry, Jan. 7, 2013, ECF No. 27. And, as with any sentence imposed by this presiding judge, a video recording of defendant's sentencing hearing is available. *See In re Sentencing*, 219 F.R.D. at 264-65.

In short, there is no good reason to violate the general rule against publication of presentence reports. The report provided by the Probation Department shall remain sealed and unavailable to the public.

B. **Sentencing Memorandum and Letters**

Defendant's sentencing submission included a memorandum that excerpted the presentence report and relied upon letters submitted by his family members and associates. *See* Def. Ltr. 1. Defendant's primary concern with unsealing is with violating the general confidentiality attached to the presentence report and the disclosing of private identifying information and medical ailments of the letter-writers. *See generally* Tr. of Hr'g, July 12, 2013. That information was not pertinent to the sentencing decision in this case.

Interests in maintaining the confidentiality of the presentence report and privacy of innocent third parties are compelling. But wholesale suppression of those documents cannot overcome the press's and public's strong interest in monitoring sentencing decisions. A sledgehammer is unnecessary where a pick will do. Careful redactions can appropriately balance the interests of confidentiality, a free press, and an informed citizenry. *Cf. Huntley*, 2013 WL 1881536, at *1 (ordering unsealing of sentencing memorandum but redactions of references to ill relatives); Fed. R. Crim. P. 49.1(a) (permitting redactions of identifying information such as an individual's social security number, date of birth, financial account numbers, and other sensitive

information). Redaction is particularly appropriate where, as here, the information that will be withheld from the public was immaterial to the sentencing decision.

The sentencing memorandum and letters shall be publicly filed and docketed with appropriate redactions by the Probation Department following the court's oral instructions at the hearing on this motion. *See generally* Tr. of Hr'g, July 12, 2013.

## V. Conclusion

The application for revelation is granted in part and denied in part. The Probation Department's presentence report shall remain sealed. Defendant's sentencing memorandum and letters of support shall be publicly filed and docketed in redacted form.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: July 17, 2013
Brooklyn, New York